Good to see you again. We're glad to hear from you. Thank you, Your Honor. Nice to see you all this morning. I'm here on behalf of Mr. Marshall. This is a little bit of an unusual case. The funds at issue had been earned from George Washington University directly deposited into the account that's at issue before the alleged conspiracy was even claimed to have begun. During trial, there was no evidence that he ever sold any drugs to anybody, had any buyers or customers, and now he wants to use those funds for the first direct appeal of right to determine whether or not the conviction was lawful. And a successful appeal would vacate the conviction and sentence. The funds themselves, there was a conviction on 8 February. Nothing happened about forfeiture until the Friday before Monday sentencing. Friday afternoon, there was a forfeiture claim. That Monday morning, because of that and a memo not being provided, the case was moved over to July. There was a hearing. There was sentencing. There was forfeiture. After that, there was a delay to file the final order. Notice of appeal was filed. Request was filed to have these funds made available to the defense for purposes of appeal. There had never been a motion to forfeit them specifically at any time up until this time, which is in July, August, after the trial that ended February 8th. And then there was a motion to forfeit the assets. That's now stayed. So the question then becomes whether or not these assets can be used for the first appeal, which, as the court held in Halbert and in Evitz and a series of other cases, is an error correction appeal. It's part, as the Supreme Court has once declared, of the system of guilt or innocence because on an error correction appeal, the question is whether or not the conviction and sentence are lawful. So in dealing with that, the court in Halbert and in Douglas versus California and in Evitz said that the right to counsel on this first tier appeal where you're dealing with guilt or innocence is essential. They related back to Gideon. They related back to Powell versus Alabama. And in Evitz, which was one of the earlier effective assistance to counsel on appeals cases, the lawyer failed to file a format that was necessary for an effective appeal, and the ineffectiveness was found to have existed in the Court of Appeals. The Supreme Court said, okay, the line of cases that deal with the right to effective assistance at trial and effective assistance on appeal converge in this situation, and both of them rely on Strickland versus Washington, which is interesting because it's not just an error. Strickland versus Washington is a fundamental error which is grounded in due process, and if there's an error of that type in both situations, then the individual is entitled to relief, whether it's at the trial level or at the appellate level. And in both ñ I'm sorry, Justice Kennedy. Well, tell me one thing, Mr. Miller, with regard to the Luis versus United States opinion. Yes, Your Honor. To what extent did that opinion rely on the fact that there had been no factual determination regarding guilt or innocence? It did rely on that fact, but it also relied on something else, and that is that the Gonzales-Lopez, the right to counsel and the right to counsel of your own choosing, which in Gonzales-Lopez was said to be if you don't have the right to counsel of your choosing because it's such an incohate, unquantifiable matter of importance to a defendant. And Justice Thomas and the four justices in the plurality majority all agreed on the Sixth Amendment includes the right to counsel of choice, and that's where their focus was. And their focus was more on the right to counsel of choice when you're going against the state, the government, to try and establish that you're not guilty and to protect yourself from a prosecution. But then in Kaplan and Drysdale, right, the court has already held that post-conviction, you don't have a right to these funds, even for your right to counsel of choice. No, in Kaplan and Drysdale, they were tainted funds from the get-go. This is something I just don't understand as a matter of logic. You can explain it to me. Why does it matter post-conviction and after there's been a judgment of forfeiture, why does it matter whether they're tainted funds or not, right? Even if they're substitute assets, doesn't the government own them? No. The government does not own them for two reasons. Number one, the government does not own them, Judge Harris, because there's a stay. And if there's success on appeal, the government will never have them. The other reason the government doesn't own them, and one of the things that you're looking at, forfeiture is part of sentencing. If it's unlawful on direct error review, they'll never get it. And you can have a situation where the defendant could maybe be found not to have an issue with trial but an illegal sentence, in addition to which there's the issue of third-party proceedings. There's a third-party innocent person has a right to contest it. They haven't happened yet. But your client can't raise third-party claims. No, no, but that's a factor of whether the government owns it or not. All the forfeiture order would have done if it was not stayed would have taken away Mr. Marshall's interest in the assets. It would not have vested them in the government. Wouldn't the government be deemed to own it in effect under Kaplan and Drysdale or Monsanto and just simply be subject to a time delay because of the stay? No, because in Kaplan versus Drysdale and Monsanto, the funds were from the get-go, the government's because they were the proceeds of criminal activity that vested when the activity took place. Substitute assets are in the same category. I guess this is what I just don't understand, and maybe I'm getting something wrong. So there are directly traceable assets that are forfeitable here. The government couldn't find those, so they're taking this money instead. Why doesn't it take on the character of the directly traceable assets and belong to the government subject to the stay? Because the law says that the proceeds have been determined by the law under Kaplan and Drysdale to be the government's when the crime occurs. There's no case from the Supreme Court of the United States or from this circuit that says that substitute assets, when the crime occurs, become the property of the government. And in order for the government to get substitute assets, they have to prove two things. One, they have to prove that the assets that were the proceeds aren't available, and B, they have to prove that the defendant did something to make them unavailable. The defendant who substituted assets they want. There's a case pending. There's no decision in Honeycutter. It was argued last month in the Supreme Court. Big Boy makes a lot of money in this operation selling our filters to meth manufacturing labs. Little Boy gets a little bit of money. The issue is can they go after Little Boy's substitute assets when he's not really the one making the money and we don't know what the decision is going to be. But that kind of issue has not been decided and is pending. So there is no case that goes that substitute assets automatically become the same as proceeds, and the issue is still up in the air and hasn't been decided yet. Has the right to counsel of one's own choosing ever been extended to appellate counsel? No, it has not. This is the only case that I know in the country where the issue is pending. And here's another important point of the Luis decision and something that I'd ask your honors to take into account. Punishment for substitute assets, which means that these guys made X amount of money, you're part of the conspiracy, we can't find their money, you did something that was honest and made honest money, we're going to take it from you. That's punishment. That's sentencing under 853. Okay. But it's a statute. We're talking about a constitutional right. We're talking about a constitutional right that's so fundamental that denial of counsel of choice is structural error. So the question then becomes like it was in Luis. In Luis they're saying we want to hold these things because if there's a conviction, then we have a right to go after them. Well, right now these are in suspension, suspended animation, under a motion to stay. And the question then becomes if we're successful on appeal, they never get them. And there are a number of issues in there that could lead to that result without going into the appeal issues now. And so we're looking at the constitutional right that is sacrosanct versus a statutory right about a conditional contingent future interest that may or may not come into force and effect. And does the constitutional right to protect yourself from a prosecution, not in all appeals, just in this one narrow first appeal of right directly, dealing with error review of the trial itself, which makes a distinctive difference. So it's not collateral anywhere else, just in this narrow little place. So in this narrow little place there's a constitutional right to counsel and counsel of choice override and overreach the government's right at punishment that they may be able to impose sometime down the road depending on what happens in appeal. And so is the right to protect yourself from the government more important than their right to get this one account when the difference is his right to protect himself. And in the Lewis decision, they recognized, based on the amicus of public defenders, CJA groups, and so on, that when you get court-appointed counsel, they're often overworked, underpaid, and they're sometimes less effective. And the issue is whether or not the government is entitled to make somebody impecunious so they get to decide whether or not they get the counsel of their choice or not. That was only related to trial counsel. So far. I recognize this is a matter of first impression. I appreciate your allowing me to address you on it this morning. But this is a very important matter because this is a different kind of appeal. This is a still part, as they said when they were talking in Evitz and Hobart, about the system of guilt or innocence. This level of appeal is still part of the system of guilt or innocence. And so the accused, we're saying, can't be made impecunious by the prosecution and denied something that would otherwise be structural error when they're determining guilt or innocence, the lawfulness of the conviction, and the lawfulness of the sentence because the constitutional right, which is a bedrock, and if you go back from Powell, Gideon, and in Gideon, he wrote by hand on a yellow paper, they appointed a forerunner to do the oral argument. In this circuit, the pro se appellant, it's going to be oral argument. Counsel is appointed by the court. The intricacies of an appeal are critical. And when you've got a complicated case like this one, where there are all these pretrial issues plus trial issues and post-trial issues, and it needs a great deal of time and energy to address, and what the request is that, and up until Luis, you could not use innocent funds to get a lawyer because the government had a right to hold them for possible punishment. Right now, the funds are being held for possible punishment. But the punishment hasn't been finally decided, and that's the whole purpose behind the right to counsel. Now, the Sixth Amendment in Luis is part of the component of the core, the ability to exercise your constitutional rights. That's what they said in Powell and Gideon. Without a lawyer, you can't get your other rights. In Evitz, they talked about the effective assistance of counsel, referring back to Gideon, referring back to Powell, because if you don't have a lawyer, you can't navigate the intricacies of appeals, all the procedural requirements, all the intricacies necessary for an appropriate appendix, for making sure that the issues that you're addressing have been properly preserved in the record, doing the research on the law, looking to see what changed in the law yesterday. It's like when they decided that materiality was a jury question, and all of a sudden everybody dealing with fraud had to change what they were doing in the middle of trial back when Governor Mandel's case was going on. So what we're saying to your honors is this. You have a fundamental core right without which the system doesn't work. The government has, as they said in Luis, a contingent possible future interest in this asset. And the interest of the Constitution, from where we sit, looking at Luis, Evitz, Hobart, Douglas v. California, Powell, and Gideon, and all the history through, says that the constitutional right is paramount. It trumps the statutory right of the contingent potential future interest, and that the defendant's right and the right of the system to see that their fairness is done at that first direct appeal of right that's attacking whether or not there's a valid conviction or sentence. It's absolutely essential, and without these funds, he's not going to get what the Constitution says he's entitled to receive. All right. We've got some time on rebuttal. Mr. Miller. Thank you. Mr. Shea. Good morning, Your Honor. May it please the Court. Evan Shea on behalf of the United States. I was not the trial counsel in this case, but I'm handling this aspect of the appeal as the asset forfeiture chief in our district. The issue before this Court is whether it should allow the defendant to claw back forfeited funds that are now the property of the public. It should not, and as Judge Harris pointed out, the key case on point here is Capital V Drysdale v. the United States. I'm going to lay out exactly why the property here is the property of the government. I'm going to touch briefly on the other side of the equation, which is the defendant's right to counsel in this context, and then touch briefly at the end about the procedures whereby the order of forfeiture was entered here and why they were appropriate. But to move back to Kaplan, Kaplan said that the defendant has no right to spend another person's money on his privately retained defense counsel. That case applies with equal force here in this case. The distinction that the Luis case, the recent Luis case made, was that with respect to substitute assets in the pretrial context, the property is not the government's yet. The government has a contingent interest. And the Luis court said the difference between that case and Capital Drysdale was that the property in Luis was the defendant's. They said pure and simple. That is not the case here. This property is the property of the United States. There's been a forfeiture order. There's been a conviction. There's been a judgment. To respond to a couple things the defense raised, one, he claimed that the property was not yet the government's because two things. One, there could be an appeal that could overturn the conviction and that would upset the forfeiture. And two, that there could potentially be third-party claims to the assets, although I think that time has passed at this point. Both of those two conditions apply equally to directly traceable property. If there is directly traceable property that's forfeited and there's an appeal that overturns the conviction, that property is no longer forfeited, just like the sentence is overturned. Same thing with third-party claims. If there's directly traceable properties, there's nevertheless a third-party process whereby third parties can come and claim under various legal positions that that property is theirs. So there's simply nothing to distinguish Capital Drysdale here. Again, this is property of the government. And another thing that the defendant raised in their brief, and briefly this morning, is this idea that we take great exception to that the purpose of this forfeiture was simply to deprive the defendant of the ability to hire counsel on appeal. That's absolutely not why this property was forfeited. This property was seized and sought to be forfeited from very early on in this case. There was ample notice that it was going to be forfeited, and it was forfeited for the same reason all other properties were forfeited by the Department of Justice. And the reasons are laid out in the Kaplan decision. There's a number of them. One is punishment. In a victim case, forfeiture is used to return money to the victims of the crime. And what the Kaplan court brought up, and I know I said it's not solely to deprive the defendant of the ability to hire counsel, but the Kaplan court said specifically that the purpose of forfeiture is to remove the economic power that the defendant has earned through his illegal conduct. And part of that is to deprive him of the ability to hire a high-powered defense with funds that are connected to the crime. So those are the reasons why forfeiture was sought in the case. It was not some sort of plan to prevent the hiring of counsel. Counsel, can I ask you, if we, hypothetically, if we agreed with you on sort of the ownership of the property issue, there's no need to reach this question about the Fifth Amendment versus the Sixth Amendment in this case, is there? Absolutely, Your Honor. No need to reach that at all. There's a reason why I raised the ownership issue first. That ends the case, and there's no need to reach into the thorny issue of the extent of the Fifth Amendment right to appellate counsel and how that tracks with the right under the Sixth Amendment. I do want to point out that, as Judge Keenan pointed out, the Supreme Court has never extended the right to appellate counsel beyond the right to an effective appellate lawyer that was laid out in the Evitz case. And if you're looking at the equation that both Kaplan and Luis looked at, which was government's interest on one side and defendant's interest on the other, I've certainly talked about the government's interest under Kaplan. That certainly carries today. You don't need to reach the other issue, but the defendant's interest here is certainly narrower than it is in the trial context where, under Gonzales-Lopez, it's structural error, there's right to counsel of choice. The Supreme Court has never gotten that far with respect to appellate counsel. But it does seem, I mean, does the government have a position on this general question? If you put to one side assets and payment, if you had facts like Gonzales-Lopez, the appellate lawyer is chosen by the defendant, paid, no question about payment, and just improperly precluded from participating in a case on appeal, that's not a constitutional issue at all? I would say the Court doesn't need to reach that here, Your Honor. I would say that it would depend on the facts of the case. But I think that the Court should tread carefully with reaching that level of protection to the right. I mean, that's a very, very substantial right that's provided to the defendant, structural right. You know, the whole case is infected with just irreconcilable error if it's not. I mean, one would hope it wouldn't arise too often. Gonzales-Lopez was an unusual case that the lawyer is improperly barred from participating in a proceeding. Correct. When it happened. Okay. It did happen. And if it happened on appeal, I can't foresee a situation in which it would, but I think it would depend on a lot of the factors in the case. And Gonzales-Lopez was very, very unique, right? The lawyer was yelling and screaming that I'm not conflicted, I'm not conflicted in the court, and nevertheless said, sorry, you're gone. So just to hit on the last point that I wanted to hit on, which is not a major point of the case, but the procedures that were followed in this case with respect to the forfeiture order. There are really two points. One is the rules were not violated. And two, even if they were, there's no remedy. This is not the type of error that would cause the removal of the forfeiture order in this case. So the rules that appellant claims were violated were Federal Rule of Criminal Procedure 32.2B1A, which says that the court should determine what property is subject to forfeiture as soon as practical after the guilty verdict. And Rule 32.2B2B, which is that the court should enter the forfeiture order prior to sentencing unless impractical. And the key word to both of those is the word practical, right? This is something that basically rests with the district court to manage their courtroom appropriately and do what makes sense in the given case. So in this case, just briefly, very, very briefly, the chronology was the first indictment of the defendant where the defendant was specifically named was the superseding indictment in February of 2014. The assets at issue here were seized in September of 2015. There was a second superseding. I'm sorry, there was a bill in particular stating that this property was going to be forfeited. The government intended to forfeit this property in November of 2015. The second superseding indictment was returned in January of 2016, which, again, specifically mentioned these assets, the $59,000 from this National Institutes of Health Federal Credit Union account. The jury trial went forward in January of 2016, and right before the case went to the jury, the district court inquired the defendant has a limited right to have the jury hear the forfeiture issue only with respect to specific property that's directly traceable. There's no jury right to a money judgment, a determination, or a determination of substitute assets. And at that point, the government represented that they were only going to seek a money judgment and they were going to seek to forfeit, we were going to seek to forfeit these $59,000 as substitute assets. I wind up with all that just to say that there was plenty of notice here that this property was going to be forfeited. In June, the sentencing was scheduled for June 13th of 2016. Friday before the sentencing, the government moved for an order of forfeiture, just seeking the money judgment, which, again, is normal practice. All that the rule requires is that there be some order of forfeiture entered prior to sentencing. Oftentimes, and the rule allows for this, there can be just a placeholder order that says the government forfeits or the defendant forfeits all proceeds of the offense or all facilitating property, whatever the case may be. So the court handling, again, Judge Chasnow handling the case as is practical said, okay, the Friday before the sentencing isn't going to work. Let's postpone it for a month to allow everyone to respond, to make argument, to think about it, and to give ample time to consider this issue. The parties filed supplemental motions in June. The sentencing was handled in July, and the court made a determination and entered the forfeiture order. So all that to say, the way that that procedure played out was absolutely practical, and the person who was in the best position to decide what was practical was Judge Chasnow. She is an experienced district judge. She knows how to handle a courtroom, and a month to address all these issues was more than enough time. The second point is even if there was some error, this is a standard as opposed to a rule where there's some ambiguity, even if there was an error, the Martin case from this court controls what the remedy is. And what the Martin court said, in that case there was a violation of a bright line rule. There was an order of forfeiture that was entered after the judgment was entered, and that's a violation of Rule 32.2B4B, which says that the forfeiture needs to be made as part of the judgment. The court in Martin, analyzing the standard laid out by the Supreme Court in another case having to do with restitution, said basically this was a – that the rules in 32.2 are what they call time directives that don't divest the District Court of Jurisdiction for entering a forfeiture order. And certainly – and therefore there was no reason not to allow the forfeiture to go forward if the District Court said it was – Does that pretty much cover everything you wanted to cover? That covers everything, Your Honor. Thank you, and I'll submit on that. All right. Thank you very much. Mr. Miller? Yes, Your Honor. Thank you. First of all, Kaplan v. Rysdales, I asked – if you take a look at it, you'll see there was a stipulation by the government in defense that before the indictment was returned, the money at issue belonged to the government. That's not this case. You would have to ignore all the relation-backed law and cases in order to put this case in the same place as that case because under that case they were proceeds, which by definition mean when the crime occurred and they received the illegal money, the day they received it, 10 seconds later it belonged, invested in the government. That is not this case. That is not this case, and this case can't be equated to this case. And you have to look at also the procedural history in this case. The procedural history in this case is when sentencing was supposed to take place in June and did not because they didn't follow the rules about providing their forfeiture on time and didn't follow the rules about filing their sentencing memorandum on time with the defense and the judge moved it. In July, when we were in front of Judge Chaznau, they did not ask for this money. It's not that they did not know about it. Everybody knows they knew about it in 2015. They didn't want it. So when we filed our notice of appeal, we asked can we have it because everybody agrees it's not proceeds and you can't treat it like proceeds and you can't put it in the Kaplan, Drosdale, Monsanto proceeds box because it's never proceeds. It's always innocent money and at most it could be a substitute, nothing more than that. The second thing is that this is a situation where since Relation Back doesn't apply and it's substitute assets and they knew about it, the question then becomes what about their violation of Rule 32.2? Martin was not the way they portray it. Martin had extensive forfeiture hearings and so on. He complained about nothing. He was convicted. He was sentenced. The forfeiture occurred. He did not a thing. He had a clever, creative lawyer who goes maybe the noncompliance of Rule 32.2 could be jurisdictional. This Court says no, it's not jurisdictional, but this Court said something else in Martin. It said that the time requirements in Rule 32.2 are enforceable. They are enforceable. We're not claiming jurisdiction. We're claiming enforceability. Since Martin, no court has been asked to decide enforceability. We can't find a case here where that issue was raised after Martin said it's enforceable. We do know that in the Shakur case that we cited in our brief from another circuit, they looked at enforceability and they determined that the time frames are enforceable. Now, counsel said that the rules say that they should do this and they should do that and they should do something else, but that's not what Congress wrote. Congress wrote that you must, as soon as practicable after conviction, determine what assets are forfeitable. The Court must have a hearing. The Court must enter an order. And why is that? So that everybody knows what's going on and then they can take their positions accordingly before you get to sentencing. Did they do that in this case? No. Even the other assets that are not at dispute here weren't sought to be forfeited as soon as practicable after February 8th conviction, not until the Friday before the Monday, June the 13th sentencing did they file. Did they file for these assets then? No. Did they file for these at the continued hearing? No. Did they file for these between the continued hearing and the entry of the final order? No. They didn't do it until after we asked for it. And when we asked for it, did they ask to forfeit? No. They opposed. Then they asked to forfeit. So that makes this case a little bit different. And we're sitting here in a situation where we have a rule that was not followed. And this is an issue where, as Judge Chasnow said, she hadn't seen any cases on it. The closest was Martin that said enforceability, but it didn't say what that meant. Shakur is another circuit. Okay. So now since Martin has addressed enforceability, here we are. Is it enforceable or not? Congress says you may get this, you may get that. You can do this, you can do that. And here's the rules you have to follow. I think it might have been Justice Frankfurter that said that the government is a great teacher in the law because they're the ones that set how the rules are to be followed. So what we're saying here is we have a constitutional right that is preeminent. And we're asking this court to allow us to be able to use these funds, which are not part of the crime, that are in suspended animation, that they came in and asked for late, to be able to vindicate on first direct tier appeal, error correction, whether or not he's validly convicted, whether or not there's a valid sentence, and whether or not the forfeiture itself is valid, which have a whole lot of issues, including this case that's pending to have, who knows when it's going to be decided, I assume by the end of this term. But that's beside the point about Honeycutt. We have a constitutional right. It trumps a statute. The Constitution is the law of the land. It's supreme. And it takes precedence. And we would ask that you apply, Luis, in this context. And I recognize that no court has been asked to do this before. Thank you. Thank you very much. We're going to come down and greet counsel.
judges: G. Steven Agee, Barbara Milano Keenan, Pamela A. Harris